EDWARD S. CHIPMAN *v.* THE NATIONAL SAVINGS BANK.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued November 5, 1941—decided January 14, 1942.

*Joseph B. Morse,* for the appellant (defendant).

*Elmer W. Ryan,* with whom, on the brief, was *Thomas J. Ryan,* for the appellee (plaintiff).

MALTBIE, C. J.  The plaintiff brought this action to recover for personal injuries suffered when, by reason of the giving way of some boards over an opening in the floor of a bedroom in a tenement he had rented from the defendant, he fell partly through the opening. The complaint alleged that the claimed defect was within the tenement the plaintiff had rented, and that at the time he rented it the defendant had agreed to make repairs and also that it had in fact a short time before the accident made repairs to the boards over the opening; and it further alleged that the defendant was negligent, first, in permitting the floor to remain in a defective and dangerous condition, and, second, in so repairing it that it was left in such a condition.

The trial court in submitting the case to the jury charged them as to the elements necessary to be established to support a recovery upon either of the bases alleged.  The plaintiff claimed to have proved that a representative of the defendant in charge of its properties directed some plumbers, who had been employed by it to repair a furnace in the cellar, to make repairs also to the covering over the opening; that one of them did so, putting a new cleat on one side and raising the covering, which had been lower than the rest of the floor of the tenement, so that it was level with it. The defendant, on the other hand, claimed to have proved that the workmen made no repairs to the covering of the opening into which the plaintiff fell, although, without any authority from it, they did make slight repairs to the covering of an opening in a different room.  The trial court submitted two interrogatories to the jury asking whether repairs were made to the opening into which the plaintiff fell and,

if so, whether they were made by order of the defendant's representative; the jury answered both questions in the affirmative. The nature of the repairs claimed by the plaintiff was such as materially to alter the conditions, and the question whether the plaintiff might have recovered on the basis of the situation before the repairs were made need not be considered. We therefore discuss the charge only as it relates to the liability of the defendant upon the basis that it made repairs to the covering over the opening.

Upon this issue, the court charged the jury that the plaintiff could recover if he was not contributorily negligent and the defendant "made repairs to this particular register hole, and left it in an unsafe condition, and if its act of leaving it in an unsafe condition was the proximate cause of the plaintiff's injury"; or, restating the matter, if the defendant "made a repair to this register hole and made it in a negligent fashion, and if that failure to remedy it properly was a substantial factor in causing the plaintiff's injuries." In another portion of the charge, the court stated that the defendant would be bound if the plumber was ordered to make the repairs as the plaintiff claimed and the act of the plumber "was a negligent act, that is, one which left the hole in a not reasonably safe condition." Its last words upon this phase of the case were: "On the second theory the plaintiff is entitled to recover if you reach the conclusion that the defendant, through a duly authorized agent, had voluntarily made repairs to the register hole and left it in a dangerous condition, and if that condition was a proximate cause or a substantial factor of the plaintiff's injury, and that the plaintiff was free from contributory negligence."

In such a situation as this the agreement of the defendant to make repairs or its voluntary act in un-

dertaking to do so is the basis out of which a duty to exercise care to guard against injury to the plaintiff would arise, but it in no way measures the extent of that duty. If in either way the duty is found to exist the plaintiff cannot recover without proving the necessary elements to establish negligence on the defendant's part. *Dean* v. *Hershowitz,* 119 Conn. 398, 409, 177 Atl. 262. The measure of the defendant's duty would be to use reasonable care to make the floor reasonably safe. *Fogarty* v. *M. J. Beuchler & Son, Inc.,* 124 Conn. 325, 327, 199 Atl. 550. The effect of the charge was to leave it to the jury to determine the liability of the defendant, not upon the basis of a failure of its employee to use reasonable care in making the repairs, but upon the conditions which resulted from his making them. It is true that in one place in the charge the court referred to the making of the repairs "in a negligent fashion," but it coupled with that instruction a further statement that if the defendant failed to remedy the condition "properly" it might be liable. A little later in the charge it defined "negligent act" as one "which left the hole in a not reasonably safe condition," and it nowhere explained the standard by which negligence would be determined. It specifically charged that the defendant would be liable if, after the repairs were made, the covering was left in an "unsafe condition," a "not reasonably safe condition," a "dangerous condition." Liability in such a case as this must rest upon the failure of the defendant to exercise reasonable care in making the repairs, not merely upon the fact that, after they were made, there remained a condition which rendered the covering of the opening not reasonably safe. The charge of the trial court was erroneous.

Our conclusion requires that a new trial be ordered and we discuss the further claims of error only so far

as may be of help upon a retrial. The jury could properly have found, from the conversation between the plaintiff and the representative of the defendant at the time of the renting, an agreement by the latter to repair the premises so long as the plaintiff lived in them. The act of the plaintiff in entering into the lease as a result of this conversation would afford sufficient consideration to support that agreement. The trial court left it to the jury to determine as a question of fact whether the parties intended that the agreement should run only for the first month of occupancy or should continue through the time the plaintiff remained in the premises as a tenant. The defendant claims that this was error, citing *Frederick* v. *Daniels,* 74 Conn. 710, 52 Atl. 414. In that case, as in this, the tenancy was a parol lease reserving a monthly rental in which the time of termination was not agreed upon; and we held that the agreement to repair was restricted to the first month of tenancy. The agreement in that case was to put the buildings in question in condition for occupancy; it was one (p. 714) "to be performed immediately." We cannot regard the decision as authority for holding that under such a lease as the one before us, where the parties intend that an agreement to repair is to continue not only for the month of the original tenancy but also for any renewals thereafter, the agreement cannot be given that effect. *Mason* v. *Howes,* 122 Mich. 329, 331, 81 N. W. 111; *Pollack* v. *Perry* (Tex. Civ. App.), 217 S. W. 967. Even though under the statute a parol lease for an indefinite time reserving a monthly rent is one for a month only and a mere holding over is not evidence of any further leasing, the tenancy may be renewed where, in addition to holding over, there is acquiescence by the landlord in the continuance of the lease. General Statutes, § 5021; *Williams* v. *Apothe-*

*caries Hall Co.,* 80 Conn. 503, 505, 69 Atl. 12; *Shulman* v. *Hartford Public Library,* 119 Conn. 428, 432, 177 Atl. 269. The jury could have found that there was a continuance of the tenancy in this case. To hold under these circumstances that the agreement to repair would continue so long as the tenancy lasted accords with the principle that where, after the termination of a lease, the parties agree to the continuance of the tenancy, the terms of the original lease remain in effect, so far as applicable. *City Coal Co.* v. *Marcus,* 95 Conn. 454, 461, 111 Atl. 857; *Digby* v. *Atkinson,* 4 Camp. 275, 277, 171 Eng. Rep. R. 88; *Wyatt* v. *Cole,* 36 L. T. R. (N. S.) 613; *Hett* v. *Janzen,* 22 Ont. 414.

It is true that ordinarily there can be no recovery of damages for negligence based upon a promise to make repairs within a rented tenement unless the landlord has notice of the defect; *Rumberg* v. *Cutler,* 86 Conn. 8, 10, 84 Atl. 107; *Glynn* v. *Lyceum Theatre Co.,* 87 Conn. 237, 239, 87 Atl. 796; but this would not of course apply as regards repairs which the landlord himself made and which resulted in a defective condition. *Crowell* v. *Middletown Savings Bank,* 122 Conn. 362, 367, 189 Atl. 172.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.