## YOUNGSET, INC. *v.* FIVE CITY PLAZA, INC.

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued November 10, 1967—decided January 4, 1968

*Ralph M. Shulansky,* for the appellant (defendant).

*H. David Leventhal,* with whom were *Herbert A. Krasow* and, on the brief, *Harold Monoson,* for the appellee (plaintiff).

Covello, J. The plaintiff brought this action to recover damages for injury to certain merchandise in a store located at 1465 New Britain Avenue in West Hartford and leased by the defendant to the plaintiff. The court rendered judgment for the plaintiff, and the defendant has appealed.

The lease between the plaintiff and the defendant is dated November 21, 1960, and became effective on March 21, 1962. The store was in a newly constructed shopping center and was occupied by the plaintiff for the business of selling children's clothing at retail. In the rear of the store and immediately under the roof of the building, there was a balcony which was used by the plaintiff for the storage of merchandise. The lease contained the following provisions: Paragraph 19: ". . . Tenant shall at all times keep the premises . . . and all partitions, doors, fixtures, equipment and appurtenances thereof . . . in good order, condition and repair, damage by unavoidable casualty excepted, except for structural portions of the premises, which

shall be maintained by Landlord . . . . The Landlord shall after receipt of written notice from Tenant, make any necessary repairs only to the exterior of the building . . . ." Paragraph 26: ". . . Landlord or its agents shall not be liable for any injury or damage to persons or property resulting from fire, explosion, falling plaster, steam, gas, electricity, water, rain or snow or leaks from any part of said building or from the pipes, appliances, or plumbing works or from the roof, street or sub-surface or from any other place or by dampness or by any other cause of whatsoever nature, unless caused by or due to the negligence of Landlord, its agents, servants or employees . . . ."

In April, 1962, water and tar leaked through the roof and damaged some merchandise stored on the balcony. The plaintiff notified the defendant, which, through its maintenance supervisor, summoned a roofing company to make repairs, and the roofing company undertook to make them. Despite the repairs made by the roofing company prior to June 5, 1962, water still leaked and pitch kept dripping into the store. The plaintiff notified the defendant numerous times, and on each occasion the defendant sent a representative to check the roof. Between April and June, 1962, the roofing company made repairs approximately ten times. The repairs included the installation of "tar catchers" under the roof and "pitch boxes" around pipes which protruded through the roof. In June, 1962, following a rainstorm, water, together with tar, leaked into the store and caused more serious damage than had occurred before. Thereafter, oversized gutters and drainpipes were installed on the building, and the plaintiff experienced no further problems with leakage of water or tar.

The complaint is in two counts. The first count alleges a cause of action for breach of covenant to make repairs to the structural portions of the premises of which the rented store was a part. The second count alleges a cause of action for negligence in failing to repair the defective roof or parts thereof.

Although the complaint is in two counts, one for breach of covenant and the other for negligence, the basic issue in each count is negligence. Where a person leases premises to another and covenants or agrees in the lease or otherwise to keep the premises in repair, he is liable in damages to the lessee if he fails to exercise reasonable care to make the repairs. *Masterson* v. *Atherton,* 149 Conn. 302, 311, 179 A.2d 592; *Chipman* v. *National Savings Bank,* 128 Conn. 493, 496, 23 A.2d 922; *DesMarchais* v. *Daly,* 135 Conn. 623, 625, 67 A.2d 549; *Scibek* v. *O'Connell,* 131 Conn. 557, 559, 41 A.2d 251; *Papallo* v. *Meriden Savings Bank,* 128 Conn. 563, 565, 24 A.2d 472; Restatement (Second), 2 Torts § 357. Since the duty arises out of the existence of the contract to repair, the contract defines the extent of the duty. *Masterson* v. *Atherton,* supra, 312. The contract in the present case provides that the defendant shall not be liable to the plaintiff for the damage sought to be recovered unless it was caused by or due to the negligence of the defendant, its agents, servants, or employees. In these circumstances, negligence, not the breach of the agreement, is the gist of the action, and it follows that the necessary elements to establish negligence on the part of the defendant must be proven if the plaintiff is to be entitled to recover. *DesMarchais* v. *Daly,* supra; *Scibek* v. *O'Connell,* supra. The court has found that in June, 1962, when water and tar leaked

through the roof above the plaintiff's leased premises it became evident that the previous repairs had not been performed in a skilful and workmanlike manner. The court concluded, however, that there is no evidence on the basis of which the defendant can be held liable in negligence. This conclusion is inconsistent with the further conclusion that the defendant is liable for all property damage suffered by the plaintiff as a natural result and consequence of the defendant's breach of covenant to repair in that the repair work was not performed in a skilful and workmanlike manner. Consequently, we consult the memorandum of decision to explain these conclusions. *Dorr-Oliver, Inc.* v. *Willett Associates,* 153 Conn. 588, 592, 219 A.2d 718; *Molk* v. *Micklewright,* 151 Conn. 606, 608, 201 A.2d 183. There we find the statement: "It is the conclusion of the court that the defendant failed to perform its covenant to keep the roof in repair, and is therefore liable to the plaintiff for the damages flowing from its breach of contract." Nowhere in its memorandum of decision does the court refer to the necessity of proof that the defendant was negligent in failing to make the repairs or that such repairs as it caused to be made were done in a negligent manner. It is apparent that in arriving at its conclusion the trial court did not consider the necessity for proof of neglect by the defendant either in failing to make the necessary repairs or that such repairs as it caused to be made were made in a negligent manner. This was undoubtedly brought about by the failure of the plaintiff clearly to allege negligence in the discharge of the defendant's obligation to repair.

Because of the patently inconsistent conclusions of the trial court, a new trial must be had.

As the plaintiff may prevail on the retrial, we will consider briefly the defendant's claim that damages, if awarded, should be based on the wholesale, rather than the retail, market value of the damaged merchandise. Ordinarily, the measure of damages for injury to personal property not amounting to total loss is the difference between its market values before and after the injury. *Stults* v. *Palmer,* 141 Conn. 709, 712, 109 A.2d 592; 22 Am. Jur. 2d 211, Damages, § 146. Market value means the price for which an article is bought and sold and is ordinarily best established by sales in the ordinary course of business. *Stoll* v. *Almon C. Judd Co.,* 106 Conn. 551, 560, 138 A. 479. But market value will not always be the appropriate measure of compensation. *Barker* v. *Lewis Storage & Transfer Co.,* 78 Conn. 198, 200, 61 A. 363; *Baldwin* v. *Porter,* 12 Conn. 473, 484. The basic aim in awarding damages is to compensate a plaintiff for his loss, so far as money can do so. *Barker* v. *Lewis Storage & Transfer Co.,* supra. Thus, we are concerned not merely with measuring a diminution in the value of the damaged property but with determining what damage has been incurred by the plaintiff as a result of the defendant's neglect. The amount of damages is to be determined not alone on either wholesale or retail market value but on all the facts and circumstances of the case, not all of which are sufficiently set forth in the finding.

As the plaintiff did not replace the damaged goods but attempted to sell them at reduced prices in the ordinary course of its business, it remained subject to some, if not all, of its usual operating expenses. The trial court, if it finds the plaintiff's course of action to have been reasonable, may properly conclude either that the damages ought to be

based on the difference between the reasonable retail values before and after the injury or that the facts and circumstances require an award in a lesser amount. *Hedderman* v. *Robert Hall of Waterbury, Inc.,* 145 Conn. 410, 415, 144 A.2d 60; see Restatement, 4 Torts § 911, comment d. The court may properly consider the availability to the plaintiff of substitute goods at the time of the injury and the means then available for recovering the salvage value of the damaged goods, as well as any additional facts and circumstances bearing on the reasonableness of the plaintiff's course of action.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.